# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# DELTA DIVISION

**JAMES PAYNE**                                                                               **PLAINTIFF**

**VERSUS**                                                        **CIVIL ACTION NO. 2:03CV369-P-A**

**FIRST NATIONAL BANK OF CLARKSDALE,**
**GULF GUARANTY LIFE INSURANCE COMPANY,**
**LEDBETTER AUTO SALES, JOE ALDERSON and**
**JOHN DOES 1-9**                                                                           **DEFENDANTS**

## MEMORANDUM OPINION

This cause is before the Court on the motions for summary judgment filed by defendants Gulf Guaranty Life Insurance Company [78], First National Bank of Clarksdale [81] and Joe Alderson [82]. The Court, having reviewed the motions, the responses, the briefs of the parties, the authorities cited and being otherwise fully advised in the premises, finds as follows, to-wit:

FACTUAL BACKGROUND[1]

James and Joanne Payne purchased a 1997 Ford Expedition from Ledbetter Auto Sales in May 2000. The Paynes financed the vehicle through First National Bank of Clarksdale (hereafter, "the Bank"). The principal amount financed was $22,189.45; that sum covered both the purchase price of the vehicle and premiums for credit life and credit disability insurance purchased by the Paynes in connection with the subject loan.[2]

---

[1] As required in considering a motion for summary judgment, the facts which follow are stated in the light most favorable to the plaintiff.

[2] Payne initialed the pertinent loan documents on the portion of the form showing Mr. Payne selection of both forms of coverage. Mr. Payne admitted in his deposition that he elected to purchase credit disability insurance; however, he denies that he also chose to purchase credit

Mr. Payne completed an application for insurance at the time of his May 1, 2000 loan closing.[3] The Bank forwarded the application and applicable premium to Gulf Guaranty Life Insurance Company (hereafter, "Gulf Guaranty"). Upon receipt of the application, Gulf Guaranty began the process of assessing the Paynes' request for coverage. In connection therewith, Gulf Guaranty wrote Mr. Payne on June 12, 2000 and June 20, 2000 to request that he complete and return a health questionnaire as soon as possible.[4] When Mr. Payne failed to respond to Gulf Guaranty's requests, the insurance company sought the Bank's assistance in obtaining the requested information from Mr. Payne. On July 10, 2000, the Bank sent Mr. Payne a letter asking him to fill out the questionnaire. On or about July 18, 2000, Gulf Guaranty received the completed form bearing Mr. Payne's signature.[5]

After reviewing and processing the insurance application, Gulf Guaranty decided not to issue the requested credit disability coverage; it elected to accept only the application for credit life insurance.[6] Gulf Guaranty notified Mr. Payne of its coverage decision by letter dated July 18, 2000,

---

life insurance at the same time.

[3] Mr. Payne's deposition testimony indicates that he completed the necessary health questionnaire on the date of the loan closing, e.g., May 1, 2000.

[4] Mr. Payne steadfastly maintains that he never received either of the letters sent by Gulf Guaranty.

[5] Mr. Payne admitted the accuracy of the health information on the form and that the signature on the form appeared to be his; however, he manifestly denied having affixed the July 14, 2000 date thereupon.

[6] Gulf Guaranty did, in fact, issue the credit life coverage; it remained in effect throughout the term of the Paynes' loan.

within the ninety day period provided by the certificate of insurance.[7]

After receiving notice from Gulf Guaranty concerning the decline of Mr. Payne's application for credit disability insurance, the Bank credited $1,661.36, the full amount of the credit disability premium, to the balance of the Paynes' loan. Mr. Payne called the bank and spoke with Joe Alderson in an effort to determine why his loan payment remained the same despite the denial of his application for credit disability insurance. Mr. Alderson explained that the premium refund had been applied to the principal balance of the loan, resulting in an earlier payoff date instead of lower monthly payments.

Approximately a year later, the Bank sought to repossess the Expedition because the Paynes were delinquent in their payments on one or more loans for which the Expedition served as collateral.[8] Mr. Payne felt that the repossession was improper; he retrieved the vehicle from the Bank's parking lot a short time later. The Bank was unsuccessful in its subsequent efforts to recover the vehicle.[9]

On June 21, 2002, the Paynes filed suit against First National Bank of Clarksdale, American Bankers Insurance Company of Florida, Ledbetter Auto Sales and Joe Alderson in the Circuit Court of Coahoma County, Mississippi. Plaintiffs filed an amended complaint on June 28, 2002 to name

---

[7] Mr. Payne admits he received the notification letter.

[8] It was Mr. Alderson's task to contact the Payne's to request that they bring their loan accounts up to date. Though Mr. Payne characterized Mr. Alderson's contacts as harassment, he admitted Mr. Alderson was simply "doing his job."

[9] Although the record is not altogether clear, it appears that Mr. Alderson pulled Mr. Payne's credit report on several occasions, perhaps in an effort to locate Mr. Payne and/or the vehicle. Mr. Payne filed a complaint with the Office of the Comptroller of the Currency about this action.

Gulf Guaranty as a defendant in lieu of American Bankers. The defendants subsequently filed answers denying any liability.

Defendants removed the action on November 20, 2003 based on this court's bankruptcy jurisdiction. After adequate opportunity for discovery, defendants Gulf Guaranty, First National Bank and Joe Alderson moved for summary judgment as to each of the claims advanced by Mr. Payne.[10] The motions have been fully briefed and the Court is ready to rule.

STANDARD OF REVIEW

Rule 56©) of the Federal Rules of Civil Procedure authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Celotex Corporation v. Catrett, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S. Ct. 2548 (1986). The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment. John v. State of La. (Bd. Of T. for State C. & U., 757 F.2d 698, 712 (5th Cir. 1985).

A judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 91 L.Ed.2d 202,

---

[10] Mrs. Payne is no longer a party plaintiff in this action pursuant to this Court's January 28, 2005 Order granting her motion for voluntary dismissal. As a further matter, defendant Ledbetter Auto Sales is no longer a party defendant as a result of this Court's December 8, 2005 order of dismissal by reason of bankruptcy.

4

106 S. Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role. Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis, 799 F.2d 218, 222 (5th Cir. 1986). "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." Id. "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment. Phillips Oil Company, v. OKC Corporation, 812 F.2d 265, 272 95th Cir. 1987). Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial. See Celotex, 477 U.S. at 323, 106 S. Ct. at 2552. Topalian v. Ehrman, 954 F.2d 1125, 1138 (5th Cir. 1992).

In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party. McPherson v. Rankin, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion. Union Planters Nat. Leasing v. Woods, 687 F.2d 117 (5th Cir. 1982). The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. Topalian, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]." John, 757 F.2d at 708. "Summary judgment cannot be supported solely on the ground

5

that [plaintiff] failed to respond to defendants' motion for summary judgment, " even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion. Id. at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. Ferguson v. National Broadcasting Co., Inc., 584 F.2d 111, 114 (5th Cir. 1978). In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact." In Re Municipal Bond Reporting Antitrust Lit., 672 F.2d 436, 440 (5th Cir. 1982). To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Fed. R. Civ. P. See also Union Planters Nat. Leasing v. Woods, 687 F.2d at 119.

While generally "[t]he burden to discover a genuine issue of fact is not on [the] court, (Topalian, 954 F.2d at 1137), "Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention–the court must consider both before granting a summary judgment." John, 757 F.2d at 712, quoting Keiser v. Coliseum Properties, Inc., 614 F.2d 406, 410 (5th Cir. 1980).

LEGAL ANALYSIS

Plaintiff's amended complaint alleged a right to recovery founded on tortious breach of duty of good faith and fair dealing, breach of fiduciary duties, fraud, usurious rates, wrongful repossession and negligent misrepresentation. In an effort to flesh out the allegations of the complaint, the defendants deposed Mr. Payne on September 23, 2004 and November 4, 2004. The Court will

address each of the causes of action alleged by plaintiff with an emphasis on the information adduced by him at his deposition. Review of the deposition transcript reveals the following concerns:

1. Bank personnel failed to inform plaintiff of the identity of the insurance company at the loan closing;

2. Bank personnel failed to lower the amount of plaintiff's monthly loan payment after receiving notice that Gulf Guaranty declined his application for credit disability;

3. Bank personnel gave plaintiff unsigned copies of the loan documents rather than signed copies;

4. Bank personnel failed to allow plaintiff to make an election regarding the amount of coverage he desired;

5. Bank personnel failed to fully explain the terms of the loan to plaintiff, especially with regard to credit life insurance;

6. Bank personnel and/or a representative of Gulf Guaranty forged or altered certain documents associated with the May 1, 2000 loan transaction and purchase of insurance;

7. Bank personnel signed plaintiff up for insurance with American Bankers without his consent;

8. Gulf Guaranty failed to provide plaintiff with a specific reason for its decision to decline his application for credit disability insurance;

9. Gulf Guaranty failed to issue a premium refund directly to plaintiff.

I.      Tortious Breach of Duty of Good Faith and Fair Dealing

Every contract between two parties includes a covenant of good faith and fair dealing. Good faith is defined as "the faithfulness of an agreed purpose between two parties, a purpose which is consistent with justified expectations of the other party." Cenac v. Murry, 609 So.2d 1257, 2373 (Miss. 1992). A breach of good faith, therefore, involves "some conduct which violated standards of decency, fairness or reasonableness." Id.

Upon review of the record, it is indisputable that plaintiff has failed to demonstrate a triable issue of fact as to his claim for breach of the duty of good faith against either the Bank or Gulf Guaranty. The same is true with respect to Joe Alderson's involvement with Mr. Payne's loan. Many of the alleged omissions on the part of the two defendants are simply not egregious enough to support a recovery, e.g., failure to identify the insurance company, failure to lower the payment amount; failure to provide plaintiff signed copies of the loan documents; failure to allow plaintiff to elect the desired amount of coverage; failure to fully explain the loan terms, failure to specify the basis for denying plaintiff's application for disability coverage and failure to issue the premium refund directly to plaintiff.

Mr. Payne's complaint that he did not voluntarily purchase credit life insurance is without any record support. His initials appear beside the portion of the form addressing insurance coverage, including a plainly worded disclosure to the effect that the purchase of credit insurance was not a prerequisite to the extension of credit.[11] Mr. Payne's insistence that he simply signed where indicated by bank personnel flies in the face of established law charging contract signatories with

---

[11] CREDIT INSURANCE - Credit life insurance and credit disability insurance are not required to obtain credit, and will not be provided unless I sign and agree to pay the additional costs."

8

a duty to read all applicable contract provisions. "A person cannot avoid a written contract which he has entered into on the ground that he did not read it or have it read to him." J.R. Watkins Co. v. Runnels, 172 So.2d 567, 571 (Miss. 1965)

Plaintiff's other allegations, specifically those pertaining to forgery and/or alteration of documents, are largely without evidentiary support. Mr. Payne does not deny completing and signing the health questionnaire–he simply maintains that he did so on the date of the loan closing. Assuming one of the defendants did alter the date, Mr. Payne cannot prove which defendant was responsible for the alteration. More importantly, Mr. Payne cannot demonstrate any resulting damage. Because plaintiff failed to demonstrate any genuine issues of material fact, the defendants are entitled to judgment as a matter of law on the plaintiff's claim for breach of duty of good faith and fair dealing.

II.     Breach of Fiduciary Duties

"Fiduciary relationship" is a very broad term embracing both technical fiduciary relations and those informal relations which exist wherever one person trusts in or relies upon another. Lowery v. Guaranty Bank and Trust Co., 592 So.2d 79, 83 (Miss. 1991). "A fiduciary relationship may arise in a legal, moral, domestic, or personal context, where there appears 'on the one side an overmastering influence or, on the other, weakness, dependence, or trust, justifiably reposed.'" Id. (quoting from Miner v. Bertasi, 530 So.2d 168, 170 (Miss.1988)) (emphasis added).

Plaintiff's claim for breach of fiduciary duty against the Bank fails for a fundamental reason: no fiduciary relationship existed between Mr. Payne and his lender. Under Mississippi law, the general rule is that there is no presumption of a fiduciary relationship between a debtor and a creditor. GMAC v. Baymon, 732 So.2d 262, 270 (Miss. 1999). The record is devoid of any

evidence that the relationship between Mr. Payne and the Bank differed from any normal debtor-creditor relationship. In the absence of such proof, plaintiff's claim for breach of fiduciary duty must fail.

III.     Fraud

Count III of the plaintiff's amended complaint includes a fraud claim founded upon the Bank's purported failure to disclose a secret agreement with Gulf Guaranty, along with allegations pertaining to the alleged forced placement of collateral protection insurance.

In order to prove fraud, plaintiff must demonstrate the following by clear and convincing evidence:

1)  a representation;

2)  its falsity;

3)  its materiality;

4)  the speaker's knowledge of its falsity or ignorance of its truth;

5)  his intent that it should be acted upon by the person and in the manner reasonably contemplated;

6)  the hearer's ignorance of its falsity;

7)  his reliance on its truth;

8)  his right to rely thereon; and

9)  his consequent and proximate injury.

Martin v. Winfield, 455 So.2d 762, 764 (Miss. 1984).

Plaintiff has failed to provide any evidence to support his claim of a secret agreement between the Bank and Gulf Guaranty. Furthermore, there is no evidence before the Court regarding

the forced placement of collateral protection insurance. Finally, review of the issues raised by plaintiff's deposition testimony fail to adduce any evidence probative of fraud. The defendants are entitled to judgment as a matter of law.

IV. Wrongful Repossession

Plaintiff also seeks recovery for with wrongful repossession. The Bank did, in fact, repossess Mr. Payne's automobile. Mr. Payne admitted during his deposition, however, that he was in default on at least one loan to the Bank at the time of the repossession.[12] His admission of this critical fact makes it impossible for him to establish the requisite elements of a claim for wrongful repossession. Accordingly, the Bank and Mr. Alderson are entitled to summary judgment on this claim as well.

V. Usurious Rates

Mr. Payne's amended complaint also claims that the Bank imposed usurious rates in connection with the May 1, 2000 loan transaction. Review of the record reveals no evidence to support plaintiff's claim that any charges imposed by the Bank in connection with Mr. Payne's loan were violative of federal or state law. Because the plaintiff failed to come forward with any evidence from which a trier of fact could conclude that the Bank engaged in usury, the Bank is entitled to dismissal of the instant claim.

VI. Punitive Damages

Inasmuch as the defendants are entitled to summary judgment on all of the plaintiff's substantive claims, the Court likewise concludes that there is no basis for the imposition of punitive damages against any of the defendants.

---

[12] The Payne's May 2, 2000 personal loan in the amount of $2,000 granted the Bank a security interest in collateral securing other loans with the Bank.

CONCLUSION

Based on the foregoing facts and analysis, the Court finds that the defendants' motions for summary judgment are well-taken and should be granted. A judgment will issue accordingly.

This, the 20th day of December, 2005.

                /s/ W. Allen Pepper, Jr.
                W. ALLEN PEPPER, JR.
                UNITED STATES DISTRICT JUDGE